# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLORIA KIJEK,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:11-1642** |
| v. | : | |
| **JUDY A. GOBER, ANTHONY PERZIA, et al.,** | : | **(JUDGE MANNION)** |
| **Defendants** | : | |
| | : | |

## M E M O R A N D U M

Pending before the court is defendants' motion for summary judgment, (Doc. No. 28), on plaintiff's claim against defendants for retaliation in violation of the First Amendment of the U.S. Constitution pursuant to 42 U.S.C. §1983. (Doc. No. 1). For the following reasons, defendants' motion will be **GRANTED**.

## I. BACKGROUND

Plaintiff Gloria Kijek brings this suit for violation of the First Amendment against Luzerne Borough and Luzerne Borough Council members Judy A. Gober, Anthony Perzia, Mary Ellen Schell, and William Turcan. Plaintiff served as secretary of Luzerne Borough beginning in July of 2008. (Doc. No. 1). She was a full-time employee receiving a salary and benefits. (Id.). In April of 2010, plaintiff and her friend, Dolores Seitz, the Luzerne Borough treasurer,

discovered that unpaid borough parking tickets had been shredded.[1] Plaintiff believed that the shredding was in violation of the Municipal Records Act, and reported the shredding of the tickets to Borough Council members.

Also in April of 2010, Luzerne Borough terminated its agreement with the Swoyersville Borough Police Department, which had provided police services to Luzerne Borough. There were allegations that the Luzerne Borough Council had terminated the agreement at a private meeting, in contravention of the Pennsylvania Sunshine Act. Plaintiff's friend, Kathleen Pajor, a Luzerne Borough resident, instituted a lawsuit over the matter, and plaintiff testified at a deposition regarding her knowledge of the circumstances surrounding the termination of the police agreement. After the parking ticket and police incidents in April of 2010, plaintiff considered her working relationship with the defendant Council members to become hostile, and felt that they increasingly questioned her work and asked her questions about Seitz and Pajor and her relationship with them. (Doc. No. 29, Ex. A at 54-58).

In September of 2010, plaintiff's employment status was changed by the Borough Council. Plaintiff became a full-time employee paid an hourly wage, rather than a full-time salaried employee. (Ex. A., at 133). In January of 2011, plaintiff was made a part-time employee. (Ex. A, at 135-36). She worked

---

[1] Unless otherwise noted, all relevant facts noted by the court are taken from defendants' statement of material and undisputed facts in support of their motion for summary judgment, (Doc. No. 29), and have been admitted by plaintiff. (Doc. No. 39). Disputed facts are noted.

approximately twenty hours per week, and her medical benefits were eliminated. (Ex. A, at 165, 192). On February 24, 2011, plaintiff was hired to become the secretary of the Home Rule Study Commission, and attended her first meeting of the Commission in early March 2011. Also around this time, plaintiff attempted to form a union of borough employees. At the March 2011 meeting of the Luzerne Borough Council, plaintiff was terminated from her employment as Borough secretary.

Plaintiff believes that the hostility she faced at work, her demotion, and her eventual termination were retaliation by the defendant Council members for her friendships with Seitz and Pajor, her work for the Home Rule Commission, testifying about the police contract, uncovering the shredding of parking tickets, and attempting to form a union, and therefore brings this lawsuit for unlawful retaliation.

Defendants argue that plaintiff's conduct in reporting the shredding of the parking tickets was part of her official duties, and therefore not protected conduct under the First Amendment. (Doc. No. 37, at 6-9). Defendants also argue that accepting a second job with the Home Rule Commission and having relationships with Seitz and Pajor are not conduct protected by the First Amendment. (Id., at 9-12). They argue that plaintiff has failed to show a connection between her allegedly protected conduct and the alleged retaliation, and, finally, that their decision to terminate plaintiff was financial, affected all borough employees, and would have been made whether plaintiff

engaged in protected activity or not. (Id., at 12-19). Defendants additionally argue that they are entitled to absolute immunity for legislative decisions, or are otherwise entitled to qualified immunity. (Id., at 20-23).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli

4

v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.  DISCUSSION

"To make out a First Amendment retaliation claim pursuant to §1983,

a plaintiff must establish three elements: '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the constitutionally protected conduct and the retaliatory action.'" Cooper v. Menges, 2013 WL 5458015 at *3 (October 2, 2013 3d Cir.)(*quoting* Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). To establish a causal connection, the plaintiff must prove either "an unusually suggestive temporal proximity between the protected activity and allegedly retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link." Cooper, 2013 WL 5458015 at *3 (*quoting* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

The defendant must be aware of the protected conduct in order to establish the requisite causal connection. Gorum v. Sessoms, 561 F.3d 179, 188 (3d Cir. 2009)(*citing* Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). A defendant may defeat a plaintiff's claim for retaliation by showing that it would have taken the same action even in the absence of protected conduct. Ambrose, 303 F.3d at 493.

Absolute legislative immunity shields local legislators from suit under §1983 for their legislative activities. Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998). To be legislative, an act must be substantively and procedurally legislative. In re Montgomery Cty., 215 F.3d 367, 376 (3d Cir. 2000)(*citing* Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996)). 'An act is substantively

legislative if it involves "policy-making of a general purpose" or "line-drawing." It is procedurally legislative if it is undertaken" by means of established legislative procedures."' Montgomery County, 215 F.3d at 376 (*quoting* Carver, 102 F.3d, at 100). Budget decisions which reflect "a discretionary, policymaking decision implicating the budgetary priorities of the city" and the services it provides are entitled to legislative immunity. Bogan, 423 U.S., at 49. Where positions are eliminated as part of a "city-wide reduction in force," as in Bogan, legislative absolute immunity is appropriate. Montgomery Cty., 215 F.3d at 376. In contrast, where a decision is made to eliminate a particular employee, that decision does not involve general policy-making and is not entitled to absolute immunity. Id.

Here, a review of the record reflects that Luzerne Borough experienced financial difficulties in 2010. The borough budget worksheet reflects than the borough suffered a $100,905.00 operating loss in the 2010 financial year. (Doc. No. 35, Ex. J).² An auditor also recognized that the borough had a "recent history of significant budget deficits," including a $100,905.00 deficit for 2010. (Doc. No. 35, Ex. M). Plaintiff denies that the borough was experiencing financial challenges at that time, (Doc. No. 39, ¶12), but points to nothing in the record to support that position.

---

²Defendants submitted several exhibits along with their motion for summary judgment. (Doc. Nos. 29 - 36). Plaintiff did not file separate exhibits, but also relies on the exhibits submitted by defendant. The court therefore refers to exhibits by their docket information and by defendants' lettering.

7

The borough budget and the auditor's report both reflect that the 2011 budget was modified, in light of the recent financial difficulties, to lower overall personnel costs through a mix of using part-time and contract employees. They both reflect that several borough positions were made-part time, or contracted out. (Doc. No. 35, Ex. J and Ex. M.) The salaries for plaintiff's position, the position of police secretary, and highway department workers were significantly reduced, as well as costs for the medical insurance and employee taxes for these employees. (Id.) The borough treasurer's position was outsourced as well.[3] The auditor's report reveals that the budget changes resulted in significant cost savings for the borough. (Ex. M).

The changes in employment status were thus not directed solely at plaintiff, but equally at other borough employees for whom there is no evidence of engaging in conduct protected by the First Amendment. Plaintiff insists that the "universal claim and testimony" of the defendants that she was terminated for financial reasons is pretextual. (Doc. No. 40, at 8). But she does not point to any evidence in the record that shows pretext. Although she points to the testimony of council president Jancuska that her "contract labor" replacement was paid a higher hourly wage than she was making at the time of her termination, (Doc. No. 32, Ex. B, at 45-47), she fails to show the borough was not, in fact, making an effort to save money through the

---

[3]Plaintiff's brief argues that Seitz's termination as borough treasurer was also pretextual, but that is not a claim before this court.

personnel changes, and she does not show that she was singled out for changes in employment status.

The record reveals that the situation here is like the one in Bogan, where a government-wide budgetary reduction caused the plaintiff to lose her position. Plaintiff here has not shown that the stated budgetary reasons for her dismissal were pretextual, and she does not show that this action was singling her out for her allegedly protected conduct. Rather, the record shows that the budget shortfalls were discussed at borough council meetings in late 2010, (Doc. No. 36, Ex. N-19 - N-22 (council meeting minutes)), that the council took the legislative action of reducing overall personnel costs in making a new budget for 2011, and that as part of those personnel decisions, plaintiff's job, and other borough employees' jobs, were outsourced. The personnel decisions made by the borough council were legislative ones which constituted budgetary prioritizing. Thus, individual defendants are entitled to absolute legislative immunity from the First Amendment retaliation claims in plaintiff's complaint. Defendants' motion for summary judgment will therefore be **GRANTED**.[4]

---

[4] Although the court's decision rests on immunity grounds, the court notes that the merits in this case appear to be on the side of defendants. As discussed above, the record reveals that defendants made budgetary decisions which had effects on nearly every borough employee. Defendants' outsourcing of nearly every borough position makes a strong case that they would have terminated plaintiff's position whether she engaged in protected First Amendment activity or not. Plaintiff's referrals to the record are sparse, she does not address the budget worksheet and audit showing that the

As to Luzerne Borough, "a municipality may be liable under §1983 only if it can be shown that its employees violated a plaintiff's civil rights." Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989)(*citing* Monell v. New York City Dept. of Social Serv., 436 U.S. 658 (1978)). As the individual defendants who are borough officials are immune from suit, the borough cannot be liable. Thus, defendants' motion will also be **GRANTED** as to the municipal defendant. Judgment will be entered in favor of the defendants. The Clerk is directed to close the case. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 8, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-1642-01.wpd

---

outsourcing of employees resulted in savings for the borough, and her almost sole reliance on Jancuska's testimony, (Ex. B, at 45-47), regarding the pay rate of her replacement to show pretext does not take into account the savings in benefits and employee taxes that are reflected repeatedly elsewhere in the record. The court's review of the record indicates that there may have been personal animosity towards plaintiff on the part of some defendants, but the record does not reveal a question of material fact regarding whether her termination was in retaliation for protected First Amendment activity.